**February 18, 1993**

CLERK OF COURT
SUPREME COURT, CNMI
FILED

93 FEB 18 P3:50

BY: _____

## IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

IN THE MATTER OF THE ESTATE   )     APPEAL NO. 91-031
OF:                            )     CIVIL ACTION NO. 90-840
                              )
   RITA KAIPAT, a/k/a       )     OPINION
   RITA CAIPAT,            )
                              )
          Deceased.      )
_____)

Argued and Submitted September 3, 1992

Attorney for Appellants:        Jay H. Sorensen
  Joaquina K. Laniyo, Rosalia L.   P.O. Box 1184
  Laniyo, Jesus Kaipat representing  Saipan, MP 96950
  the children of Maria Kaipat,
  Antonio F. Kaipat representing
  the children of Jose I. Kaipat,
  and Margarita K. Lisua representing
  the children of Angelica Kaipat
  Kosau Lisua

Attorney for Appellees:         Reynaldo O. Yana
  The Heirs of Jesus Faisao,     P.O. Box 52
  deceased; Dolores Pelisamen,    Saipan, MP 96950
  and Luis Pelisamen

Attorney for Appellee:          John Manglona
  Alejandro Laniyo           P.O. Box 222 CHRB
                        Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

VILLAGOMEZ, Justice:

### FACTUAL AND PROCEDURAL HISTORY

This appeal involves two consolidated probate cases: one pertaining to the estate of Rita Kaipat, deceased ("Rita"), the

other pertaining to the estate of Rita's daughter, Nieves Kaipat Olopai, deceased ("Nieves"). Each estate claims ownership of the same asset -- a parcel of land identified as Lot No. 1772, containing an area of 3.7 hectares and situated at Chalan LauLau, Saipan. Evidence presented at trial showed that Lot No. 1772 was originally owned by Rita's mother, Vicenta M. Kaipat, deceased ("Vicenta").[1]

On August 7, 1952, the Trust Territory Government issued Title Determination ("T.D.") 277 which determined that Lot No. 1772 "is the property of Rita Kaipat." The title determination was not appealed. Certain of Vicenta's heirs, comprised of the descendants of Benigno and Isaac, claim in this action that ownership of the land descended to all of Vicenta's heirs, and not to Rita alone. They claim that their right to share the land derives from Carolinian custom on land ownership, and that Rita holds title to the land, not as sole owner, but as customary trustee for all the heirs of Vicenta.

The trial court held a hearing in July and August, 1991, and the parties thereafter submitted written argument. On September 24, 1991, the trial court issued a written decision, wherein it stated:

> [T.D. 277] was never appealed. Hence, it must stand as a judgment. The Court accepts the findings that [Rita] is the sole owner thereof. The invitation to set it aside and declare the land to be family land is **declined**. The guidelines set forth in the Estate of Igitol, 3 CR 906 (S.C. 1989) are not applicable to the facts now before the Court. In Igitol, the Court dealt with a

---

[1] Vicenta also had two sons, Benigno and Isaac.

parcel of land that was originally family land. Here, there is ample evidence that the land belonged solely to [Rita].

Decision dated September 24, 1991, at 4 (citations omitted; emphasis in original). The heirs of Benigno and Isaac timely appealed.

## ISSUE PRESENTED AND STANDARD OF REVIEW

■ Whether the trial court erred in accepting T.D. 277 as final and declining to determine whether Rita held title on behalf of her clan in accordance with Carolinian custom. Since the trial court ruling hinges on the principle of administrative res judicata, a question of law, we review the issue de novo. In re Estate of Dela Cruz, No. 90-022, slip op. at 5 (N.M.I. 1991).

## ANALYSIS

■ In Estate of Dela Cruz, we held that although a land title determination should be accorded finality under the principle of administrative res judicata, the trial court may still determine issues left unanswered by the title determination. In that case, the title determination left unanswered the question of who were the rightful heirs. Estate of Dela Cruz also states that a land title determination "should ordinarily be given res judicata effect, and may not be set aside unless it was (1) void when issued, or (2) the record is patently inadequate to support the agency's decision, or if according [  ] the ruling res judicata [effect] would (3) contravene an overriding public policy or (4)

497

result in a manifest injustice." Estate of Dela Cruz, at 11.

In this case, T.D. 277 vested title in the name of Rita Kaipat. As such, it appears to be final under general principles of administrative res judicata. Only if there is evidence that the determination was (1) void when issued, (2) the record is patently inadequate to support the agency's decision, or if according the ruling res judicata effect would (3) contravene an overriding public policy, or (4) result in a manifest injustice, may it be set aside. Id.

T.D. 277 leaves unanswered a factual question relating to the title determination itself. Because the parties are of Carolinian descent, the descent of land is governed by Carolinian customary law.[2] Only where the original owner clearly decides to depart from Carolinian customary law may a devise to an heir stand. Estate of Lorenzo Igitol, 3 CR 907 (N.M.I. Super.Ct. 1989).

For the reasons set forth below, we hold that the trial court erred when it "declined" to look behind T.D. 277 to determine how Rita acquired the land. Whether Rita held Lot No. 1772 as her own or as title trustee on behalf of the heirs of Vicenta (since Rita became the clan's matrilineal head upon Vicenta's death) depends upon a factual determination of whether, notwithstanding Rita's name alone in the title determination, she in fact is holding title on behalf of the clan. Estate of Dela Cruz.

The record on appeal contains facts regarding the use and occupancy of Lot No. 1772 by the heirs of Vicenta. There is also

---

[2] See 8 CMC § 2904 for the codification of Carolinian customary land law.

498

evidence in the record which shows that Rita held title to Lot No. 1772 as if she were a customary trustee for all Vicenta's heirs.[3] Thus, the trial court should have looked behind T.D. 277, examine the facts surrounding the ownership of Lot No. 1772, and determine whether it should be read literally, or whether Rita's ownership of the land placed <u>customary</u> legal title in her, on behalf of all the clan members, at the time of Vicenta's death.

There is a lack of evidence regarding how Rita acquired sole ownership of the land from her mother, Vicenta. Although it is true that the parties appear to have stipulated that the land was received by Rita from Vicenta by inheritance, that fact begs the question. Still unanswered is the question of whether Rita inherited it as her own or on behalf of the clan. In view of the clear Carolinian customary law on the use and descent of clan land, it is indeed unusual for an ancestor to cut off other heirs from sharing in the land. Because such "sole" inheritance appears to go against the grain of Carolinian land law, it behooves the trial court to look into the underlying basis for Rita's claim that she inherited the land outright.

Only by examining the basis for Rita's ownership in her name alone and determining whether it passes muster factually in the light of Carolinian land law would there be a basis for a literal reading of the title determination issued to Rita. If there is no

---

[3] The trial court wrote: "From the evidence presented, it is clear that [Rita] opened her heart and home to her brothers Isaac and Benigno and their children. Rita allowed them to stay with her, permitted them to farm and build their houses on her property and share virtually everything she owned. She treated every one [sic] under her roof alike." Decision at 3. The trial court also found that Rita had adopted Dolores Kaipat Pelisamen, one of Isaac's daughters, through the Carolinian custom of mwei mwei. Id.

basis for her to hold title in her name alone, then the land remains clan land. In that event, the title determination should be corrected and the right of the other heirs to the use of the land, under Carolinian custom, recognized. If it is proven that Rita holds the land in trust, allowing the T.D. to stand because it is "final" would result in manifest injustice to the other heirs.

We hold that, based on the record before us, the trial court should have reviewed and examined the basis for Rita's sole ownership against the competing claim of the other heirs in view of Carolinian customary land law. Only if it is established that Rita inherited the land alone, may the title determination stand.

We, therefore, **REVERSE** and **VACATE** the judgment and **REMAND** this matter for further proceedings consistent with this Opinion.

Dated this 18th day of February, 1993.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice